FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 28 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LG CAPITAL FUNDING, LLC,

                           Plaintiff,

- against -

VAPOR GROUP, INC.,

                           Defendant.
------------------------------------------------------------x

<u>OPINION AND ORDER</u>
16-cv-03951 (NG)(RER)

**GERSHON, United States District Judge:**

Plaintiff LG Capital Funding, LLC ("LG Capital"), a New York corporation with its principal place of business in Brooklyn, New York, brings this action against Defendant Vapor Group, Inc. ("Vapor Group"), a publically traded Florida corporation with its principal place of business in Miami, Florida. Plaintiff alleges claims for breach of contract and unjust enrichment, and it seeks costs, expenses, and attorneys' fees. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff now moves for partial summary judgment on its claim for breach of contract. For the reasons set forth below, plaintiff's motion is granted in part and denied in part.

**I.    Facts**

Except as otherwise noted, the facts are undisputed for purposes of this motion. On October 8, 2014, LG Capital and Vapor Group entered into a Securities Purchase Agreement ("SPA 1"), whereby Vapor Group issued to LG Capital a convertible redeemable promissory note with a face value of $115,500 ("Note 1"), annual interest rate of 8%, and maturation date of October 8, 2015. Note 1 carried with it a 10% original issue discount such that its purchase price was $105,000. On October 8, 2014, Dror Svorai, then Chief Executive Officer of Vapor Group, executed a Disbursement Authorization instructing LG Capital to wire $100,000 to Vapor Group and $5,000 to New Venture Attorneys P.C. for legal services provided in connection with SPA 1 and Note 1.

1

On October 14, 2014, LG Capital wired the funds to Vapor Group pursuant to the Disbursement Authorization, and Vapor Group accepted the $100,000 as satisfaction of Note 1.

On May 11, 2015, LG Capital and Vapor Group entered into a second Securities Purchase Agreement ("SPA 2"), which provided for the issuance of an 8% convertible redeemable promissory note ("Note 2") with face value of $35,000 and maturation date of May 11, 2016. That same day, Svorai executed another Disbursement Authorization instructing LG Capital to wire $33,250 to Vapor Group and $1,750 to New Venture Attorneys P.C. for legal services provided in connection with SPA 2 and Note 2. On May 14, 2015, LG Capital wired the funds pursuant to the Disbursement Authorization, and Vapor Group accepted the $33,250 as satisfaction of Note 2.

The interest rate on the face of each note is 8%. (Ex. D. to Lerman Decl. at 1; Ex. H to Lerman Decl. at 1). Notes 1 and 2 also both provide for various Events of Default, and both state that "[u]pon an Event of Default, interest shall accrue at a default interest rate of 24% per annum, or if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." (Ex. D. to Lerman Decl. at 5; Ex. H. to Lerman Decl. at 5). Thus, upon the occurrence of an Event of Default, the 8% interest rate jumps to 24%.

Notes 1 and 2 also provide LG Capital with an option to convert portions of each Note's principal face amount and accrued interest into shares of Vapor Group common stock. Pursuant to this option, on April 21, 2015, LG Capital converted $8,000 of principal and $331 of accrued interest on Note 1 into Vapor Group common stock, leaving a principal balance of $107,500 on Note 1. On May 4, 2015, it again exercised its conversion rights under Note 1, converting $17,500 of principal and $774.79 of accrued interest into Vapor Group common stock. LG Capital claims that this leaves a balance of $90,000 on Note 1, but Vapor Group disputes this figure to the extent it does not account for the undisbursed 10% issue discount. That is, Vapor Group argues that the

balance on Note 1 following the conversions to common stock is actually less than $90,000 because the original loan paid out under Note 1 was subject to the 10% original issue discount so that it was 10% (or $10,500) less than Note 1's original face value, which was $115,500.

On May 21, 2015, Vapor Group became delinquent in its filing with the Securities and Exchange Commission ("SEC") for its failure to file a Quarterly Report; this constituted an Event of Default under Note 1. Default interest of 24% thus began to accrue on May 21, 2015 on Note 1, and default interest began to accrue on Note 2 by virtue of a cross-default provision in Note 1. On October 8, 2015, Note 1 reached maturity and became due and payable. On May 11, 2016, Note 2 reached maturity and became due and payable. Apart from the conversion of the principal value and accrued interest of Note 1 to common stock as discussed above, Vapor Group has not made any payment to LG Capital under either Notes 1 or 2 as of the date of the filing of the papers for this motion.

## II. Summary Judgment Standard

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the nonmoving party must "come forward with

3

specific facts showing that there is a genuine issue for trial." *Matsushita Electric Ind. Co., LTD. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). However, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252.

### III. Discussion

### A. Breach of Contract

Plaintiff now moves for summary judgment on its breach of contract claim. To establish a claim for breach of contract under New York law, a plaintiff must show: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

Here, Vapor Group does not dispute that all elements are met, including that it breached the terms of Notes 1 and 2. Rather, Vapor Group invokes the affirmative defense of criminal usury and argues that the 10% issue discount on Note 1 is functionally hidden interest, which, when combined with the 24% default interest, spikes the effective interest rate above the legal limit of 25%, in violation of New York's criminal usury statute, N.Y. Penal Law § 190.40.[1]

---

[1] N.Y. Penal Law § 190.40 provides: "A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period."

Vapor Group does not, and cannot, assert a criminal usury defense as to Note 2 because it did not carry the 10% issue discount. And, as mentioned, on May 21, 2015, Vapor Group defaulted on Note 2 by virtue of its failure to timely file a Quarterly Report with the SEC under Note 1 and Note 1's cross-default provision. Plaintiff's motion for summary judgment as to defendant's liability under Note 2 is therefore granted. LG Capital is entitled to a total of $53,953.88 in damages. This consists of Note 2's face value ($35,000),[2] seven days of 8% interest (from the date of Note 2's funding on May 14, 2015 to Vapor Group's default on May 21, 2015) amounting to $53.70; and, as requested by plaintiff, 820 days of 24% interest (from May 22, 2015 to the date of filing of this motion on August 18, 2017), amounting to $18,900.19.

As to Note 1, Vapor Group is correct that New York's criminal usury statute defines an interest rate of 25% or more as criminally usurious. *See* N.Y. Penal Law § 190.40. The parties dispute, however, whether the criminal usury law applies to default interest rates. In *Manfra, Tordella & Brookes, Inc. v. Bunge*, the Second Circuit stated, in dictum and in the context of a discussion about New York's *civil* usury laws, that New York "usury laws do not apply to defaulted obligations." 794 F.2d 61, 63 n.3 (2d. Cir. 1986) (emphasis added). Several district courts have since concluded that the *criminal* usury law, like the civil usury law, does not apply to default interest rates. *See Roswell Capital Partners LLC v. Alternative Const. Techs.*, 2009 WL 222348, at *15–*16 (S.D.N.Y. Jan. 30, 2009); *Sabella v. Scantek Med. Inc.*, 2009 WL 3233703, at *17 (S.D.N.Y. Sept. 25, 2009); *Hillair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F.

---

New York's civil usury statute, by contrast, prohibits charging interest on a "loan or forbearance" at a rate above 16% annually. *See* N.Y. Gen. Oblig. Law § 5-501(1)–(2); N.Y. Banking Law § 14–a(1). Because Vapor Group is a corporation, it cannot assert a civil usury defense. N.Y. Gen. Oblig. Law § 5-521(1).

[2] Because the parties do not dispute that $1,750 was used to reimburse attorneys associated with the issuance of Note 2, this fee is not hidden interest and Vapor Group is liable for it. *Hillair Capital Investments, L.P.*, 963 F. Supp.2d 336, 339 (S.D.N.Y. 2013).

Supp.2d 336, 340 (S.D.N.Y. 2013); *Beaufort Capital Partners LLC v. Oxysure Sys., Inc.*, 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017).

However, in a recent decision, Judge Cathy Seibel engaged in a comprehensive analysis of state and federal cases and convincingly determined that the New York Court of Appeals "would hold that the criminal usury cap limits interest charged on debts to 25% annually, even for defaulted debts." *Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 144 (S.D.N.Y. 2017); *accord Union Capital LLC v. Vape Holdings Inc.*, 2017 WL 1406278, at *8 (S.D.N.Y. Mar. 31, 2017). I find Judge Seibel's reasoning persuasive and conclude that the state criminal usury cap applies to default interest rates.

This, however, does not end the inquiry. Vapor Group's usury defense requires a finding that the 10% issue discount on Note 1—amounting to $10,500—is hidden interest, rather than a reasonable fee attendant to the loan. Borrowers may pay expenses attendant on a loan without rendering the loan usurious. *Lloyd Capital Corp. v. Pat Henchar, Inc.*, 80 N.Y.2d 124, 127 (1992). However, when fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are disguised loan payments, such fee expenses are considered in determining the interest rate. *Hillair Capital Investments, L.P.*, 963 F. Supp. 2d at 339; *see Lloyd Capital Corp.*, 80 N.Y.2d at 127. The question of the purpose of a fee payment is an issue of fact. *See Lloyd Capital Corp.*, 80 N.Y.2d at 127 ("[borrowers] made no showing that fees charged in this case were a pretext for higher interest, so as to create a triable issue of fact.").

Plaintiff argues that this issue need not be tried because the 10% issue discount, even if considered hidden interest, brings the total interest rate to 18.8%, well below the legal limit. However, the calculation used by LG Capital to reach the 18.8% interest rate does not account for

the 24% default interest.[3] It simply combines the 8% pre-default interest rate with the 10% issue discount and concludes that the composite interest rate is 18.8% percent and thus below the cap. But such analysis misses the point of Vapor Group's argument—that it is the 10% issue discount *combined with* the 24% default rate that renders Note 1 criminally usurious. LG Capital does not account for the latter interest rate. Since the nature of the issue discount is a question of fact, LG Capital's motion for summary judgment as to Note 1 must be denied.

**B.     Remedy if Interest Rate Found to be Usurious**

Although a finding of usury awaits a factual decision, the parties have briefed the issue of remedies. Specifically, Vapor Group argues that summary judgment should be denied because there is a dispute of material fact as to the remedy for a criminally usurious note. Def. Mem. of Law at 4–5. This is incorrect. Remedies are an issue of law, not of fact, and therefore not a barrier to summary judgment. I thus address the issue of remedies in the event that a finding of usury is made.

In *In re Venture Mortg. Fund, L.P. v. Schmutz*, the Second Circuit stated that it is an open question under New York law whether a loan is void if it violates New York's criminal usury statute without violating the civil usury statute, or whether a district court should apply a non-usurious interest rate or cancel the interest obligation but not the obligation to pay the principal. 282 F.3d 185, 189 (2d. Cir. 2002). The Court also noted the "harsh" consequences to a lender of voiding a usurious loan transaction: "the borrower is relieved of all further payment—not only

---

[3] LG Capital did the following arithmetic to support its argument: first, it identified the total amount due under Note 1 by multiplying $115,500 (the principal amount due) by 1.08 (the pre-default interest rate) to get $124,740. Then, it subtracted $105,000 from $124,740 ($124,740–$105,000) to get $19,740, thereby identifying the dollar value of the 10% issue discount as applied to the total amount due. Finally, it divided $19,740 by $105,000, the purchase price of the loan, resulting in an 18.8% interest rate. Def's Mem. of Law at 16.

7

interest but also outstanding principal . . . [i]n effect, the borrower can simply keep the borrowed funds and walk away from the agreement." *Id.* at 189. Following *In re Ventures,* courts have declined to void usurious loans, preferring the alternatives offered by the Second Circuit. *See e.g., Prof'l Merch. Advance Capital, LLC v. C Care Servs., LLC,* 2015 WL 4392081, at *5 n. 4 (S.D.N.Y. July 15, 2015) (stating that, if the agreement at issue were found to be usurious, the court would set a non-usurious interest rate rather than voiding the agreement.); *In re BH Sutton Mezz LLC,* 2016 WL 8352445, at *38 (Bankr. S.D.N.Y. Dec. 1, 2016) (relying on *In re Ventures* and revising the interest obligation to a non-usurious rate); *see also Carlone v. Lion & the Bull Films, Inc.,* 861 F.Supp.2d 312, 323 (S.D.N.Y 2012) (reasoning that voiding could lead to "unjust results" and holding that the "better approach, at least in these circumstances, is to void only the usurious interest rate.").

Here, Note 1 expressly accounts for the possibility of a usurious note: "Upon an Event of Default, interest shall accrue at a default interest rate of 24% per annum or, if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law." (Ex. D. to Lerman Decl. at 5). I find no reason not to abide by the terms of an agreement entered into by two sophisticated parties, especially when the alternative—to void Note 1— would cause precisely the kind of "harsh" circumstances against which the *In re Ventures* Court cautioned. Should the interest rate be found usurious, the rate will be revised to a non-usurious rate.

### C. Costs and Attorneys' Fees

LG Capital also seeks costs, expenses, and attorneys' fees. When a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable. *Diamond D Enterprises USA, Inc. v.*

*Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (internal quotations omitted). Here, both Notes 1 and 2 unambiguously provide that LG Capital is entitled to costs and attorneys' fees if it prevails in litigation related to the Notes. (Ex. D. to Lerman Decl. at 4; Ex. H. to Lerman Decl. at 4). Following trial, LG Capital will have an opportunity to seek costs, including attorneys' fees, on Note 2, and, if successful at trial, on Note 1.

**D.     Conclusion**

For the foregoing reasons, LG Capital's motion for summary judgment as to breach of contract on Note 2 is GRANTED. Its motion for summary judgment as to breach of contract on Note 1 is DENIED. Given that neither party made a jury demand, the parties are directed to attend a pre-trial conference on July 9, 2018, at which time I will set the date for a bench trial. Parties should review my Individual Rules and be prepared to orally discuss the evidence they intend to offer at trial. Individual Rules § 4A.

Since there are still issues to be decided, the Clerk of Court is directed to refrain from entering judgment until the case is fully resolved.

**SO ORDERED.**

/s/ *Nina Gershon*
**NINA GERSHON**
**United States District Judge**

June 27, 2018
Brooklyn, New York